255 P.3d 813 (2011)
161 Wash.App. 907
STATE of Washington, Respondent,
v.
David Andrew FRASQUILLO, and Joseph Frasquillo, Jr., Appellants.
Nos. 39128-7-II, 39135-0-II.
Court of Appeals of Washington, Division 2.
May 17, 2011.
*814 Jan Trasen, Attorney at Law, Seattle, WA, Michelle Bacon Adams, Law Office of Michelle Adams PLLC, Port Orchard, WA, for Appellants.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
WORSWICK, A.C.J.
¶ 1 At a consolidated jury trial, David and Joseph Frasquillo were each convicted of two counts of second degree assault and one count of attempted second degree assault, all with firearm sentencing enhancements. Joseph[1] was also convicted of first degree unlawful possession of a firearm. David appeals his convictions, arguing that (1) introducing Joseph's statements against him violated his confrontation clause rights,[2] (2) the trial court gave an erroneous accomplice liability instruction, and (3) there was insufficient evidence as to one of the victims. Joseph appeals his convictions and the firearm enhancements, arguing that (1) the trial court erroneously gave a transferred intent jury instruction, (2) the trial court erred by failing to dismiss the attempted assault charges, (3) there was insufficient evidence to prove the assault charges, (4) the trial court's refusal to sever the firearm possession charge violated his right to a fair trial, (5) the trial court placed him in double jeopardy by failing to dismiss with prejudice two *815 first degree assault charges on which the jury did not reach a unanimous verdict, and (6) the trial court erred by applying multiple firearm sentencing enhancements because the firearm was an element of each of the charged offenses. In his statement of additional grounds (SAG),[3] Joseph further argues that (1) there was insufficient evidence to convict him of firearm possession, and (2) the trial court gave an erroneous "to convict" instruction. We affirm.

FACTS
¶ 2 This case involves a conflict between two groups of friends that escalated into David and Joseph Frasquillo and an accomplice shooting out the windows of an occupied house. The conflict was between the friends of Andrew Treacher[4] and the friends of Andrew's ex-girlfriend, Shaelyn Luzik.[5]
¶ 3 On the evening before the incident, Andrew's friend Dustin Williams received a text message claiming that Shaelyn came to Andrew's workplace with four men, including her boyfriend Matthew Knowlton, and pushed Andrew around. The record does not demonstrate whether this assault actually occurred; the only evidence presented at trial regarding this exchange was testimony that Shaelyn's friends, Jacob Knowlton and Mike Lawrence, came to Andrew's workplace and were loud and disorderly. Nonetheless, Dustin retaliated by leaving a threatening note on Shaelyn's car. From there, a conflict built between the two groups involving the exchange of threatening text messages and phone calls that culminated in an agreement for the groups to meet in Silverdale to fight.
¶ 4 Before driving to Silverdale, Andrew's group drove past the home of Shaelyn's boyfriend, Matthew Knowlton, to find out if Matthew and Shaelyn were there or if they had left to meet them in Silverdale. Matthew and Shaelyn were there, though the group did not see them. Matthew saw the group's two cars drive past his house without their lights on. Due to the threatening phone calls and text messages, Matthew called the police and reported that suspicious cars had driven past his house.
¶ 5 Andrew's group then drove to Silverdale to meet Shaelyn's group, but Shaelyn's group was not there. Zach Gibbs-Churchley, one of Andrew's friends, then directed the group to the Frasquillo home where they met David and Joseph Frasquillo. There, one of the witnesses, Aaronessa Devin, saw both David and Joseph handle a pair of shotguns.
¶ 6 Andrew's group then met up in the parking lot of a Payless drug store in East Bremerton. Aaronessa testified that David and Joseph were in Zach's minivan[6] in the Payless parking lot at that time, and Zach was very angry at Shaelyn's group. Andrew testified that he saw both David and Joseph in Zach's van wearing paintball masks and holding shotguns. He also testified that Zach's van drove out of the parking lot just before 3:00 a.m.
¶ 7 At 2:30 or 3:00 a.m., Matthew saw a light blue or dark color Mercury Villager or Nissan Quest minivan drive past his house. Matthew got back into bed, and then the window of his bedroom shattered. Matthew assumed the window had been shattered by a rock. Shaelyn, who was in bed with Matthew at the time, also believed a rock had shattered the window. Shaelyn received superficial cuts from glass that fell onto the bed.
¶ 8 Also in the house were Matthew's mother, Linda, his father, Keith, and his brother, Jacob. Linda was awake at the time of the shooting. Linda testified that she heard two loud knocks. Keith was asleep at the time of the shooting and was awakened by what he believed was "a really loud knock on the door." 4 Report of Proceedings at 428. There was no evidence of either Keith or Linda being frightened by the incident. Jacob slept through the shooting. A subsequent police investigation revealed *816 that Matthew's bedroom window and the window of another room in the house had been shot out by two shotgun blasts. The police arrested Zach in connection with the shooting.
¶ 9 The police obtained a warrant to search the Frasquillo house and, while executing the warrant, saw Joseph Frasquillo's car drive past the house and accelerate away. A deputy pursued the car and stopped it, detaining David and Joseph. Before the police searched the trunk of the car, Joseph said that the shotgun inside belonged to David. David also told the police that the shotgun was his. The police searched the trunk of the car and found a shotgun and two paintball masks. The police found another shotgun in an unlocked case in the Frasquillos' living room. Evidence at trial established that the car belonged to Joseph and further established that the shotguns found were the same guns that David and Joseph had possessed just before the shooting. David and Joseph's father testified that all guns in the Frasquillo house were kept locked and away from Joseph. David and Joseph's brother, Darren Frasquillo, testified that both of the shotguns at issue belonged to David, who did not let Joseph use them.
¶ 10 The State charged both David and Joseph with first degree assault or, in the alternative, second degree assault against Matthew and Shaelyn (counts I through IV), and with attempted second degree assault against Keith, Linda, and Jacob (counts V through VII). All of the assault charges alleged the use of a firearm as a sentencing enhancement. The State also charged Joseph with first degree unlawful possession of a firearm.
¶ 11 The State moved to consolidate the charges against David and Joseph; the trial court granted this motion. Joseph moved to sever the firearm charge, arguing that David's testimony would be necessary for Joseph's defense to that charge and that David would be unavailable to testify in the consolidated trial because he was a codefendant. The trial court denied this motion. During pretrial motions, when discussing Joseph's statement that David owned the shotgun found in Joseph's trunk, David's counsel assured the trial court that the statement did not raise an issue under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
¶ 12 At trial, David and Joseph called an alibi witness, Tiffany Weir. Tiffany testified that David and Joseph had been at her house from 10:30 p.m. on the night before the shooting until at least 5:00 a.m. on the morning of the shooting. A detective testified that Tiffany reported that David and Joseph had left her house at 1:30 or 2:00 that morning, though Tiffany denied making such a statement. At the close of the State's case and again at the close of all the evidence, both David and Joseph moved to dismiss the charges for insufficient evidence. The trial court denied these motions.
¶ 13 The trial court instructed the jury on transferred intent.[7] The trial court also gave instructions on accomplice liability.[8] And the trial court further instructed the jury not to consider one defendant's out-of-court statements as evidence against the other.[9] The trial court also gave "to convict" instructions on the second degree assault charges that failed to include the intent element.[10] The *817 jury found David and Joseph guilty of second degree assault against Shaelyn and Matthew (counts II and IV), and of attempted second degree assault against Jacob (count VII). The jury returned special verdicts finding that David and Joseph were armed with firearms during all three assaults. The jury failed to reach unanimous verdicts as to first degree assault against Shaelyn and Matthew (counts I and III) and as to attempted second degree assault against Keith and Linda (counts V and VI). The jury found Joseph guilty of first degree unlawful possession of a firearm.
¶ 14 At sentencing, the State moved to dismiss counts I, III, V and VI without prejudice. David and Joseph argued that the counts should be dismissed with prejudice. The trial court granted the State's motion and dismissed the counts without prejudice. The trial court sentenced Joseph to 132 months of incarceration, including 90 months for firearm sentencing enhancements. The trial court sentenced David to 103 months of incarceration, also including 90 months for firearm sentencing enhancements. David and Joseph appeal.

ANALYSIS

I. Joseph Frasquillo

A. Transferred Intent Instruction
¶ 15 Joseph argues that the trial court violated his right to a fair trial by giving the transferred intent jury instruction. He argues that the doctrine of transferred intent did not apply because neither Linda, Keith, nor Jacob were harmed or put in apprehension of harm. We hold that the transferred intent instruction was erroneous, but the instruction as written did not apply to the attempted assault charges and was harmless.
¶ 16 An erroneous instruction is harmless if it appears beyond a reasonable doubt that the error did not contribute to the verdict. State v. Brown, 147 Wash.2d 330, 332, 58 P.3d 889 (2002). An instructional error that benefits the defendant is harmless beyond a reasonable doubt. See State v. Bailey, 114 Wash.2d 340, 349-50, 787 P.2d 1378 (1990).[11]
¶ 17 Our Supreme Court addressed the doctrine of transferred intent in the context of assault in State v. Elmi, 166 Wash.2d 209, 207 P.3d 439 (2009). There, Elmi used a firearm to shoot into his estranged wife's house. He was convicted of attempted first degree murder against his wife and first degree assault against her children who were also present in the house during the shooting. On appeal to the Supreme Court, Elmi argued that the State was required to prove that he had the specific intent to assault the children. The court disagreed, holding that when a person shoots into a building intending to harm a certain occupant, under the assault statute[12] this intent transfers to any victims who were unintentionally harmed or put in apprehension of harm.[13]Elmi, 166 Wash.2d at 218, 207 P.3d 439. The court held that there was sufficient evidence to find that the children were put in apprehension of harm and, thus, Elmi's intent to assault his wife properly transferred to her children. Elmi, 166 Wash.2d at 218-19, 207 P.3d 439.
¶ 18 From Elmi, it is clear that the intent to assault one victim transfers to all victims who are unintentionally harmed or put in apprehension of harm. The logical corollary of Elmi is that intent does not transfer to "victims" who are neither harmed nor put in apprehension of harm.
¶ 19 Contrary to Elmi, the transferred intent instruction to which Joseph assigns error read, "If a person acts with intent to *818 assault another, but the act harms a third person, the actor is also deemed to have acted with intent to assault the third person." Clerk's Papers (CP) at 339 (emphasis added). This instruction required that the victim be harmed in order for transferred intent to apply. This was error because under Elmi, transferred intent can also apply to victims who are only put in apprehension of harm. But this error was not to Joseph's detriment. As such, any error was harmless as to Joseph's conviction for attempted assault against Jacob.

B. Motion to Dismiss Attempted Assault Charges
¶ 20 Joseph next argues that the trial court erred by refusing to grant his motion to dismiss counts V, VI, and VII (the attempted assaults against Keith, Linda, and Jacob).[14] Joseph argues that dismissal was warranted because the transferred intent doctrine did not apply to the attempted assault charges, and because there was insufficient evidence of Joseph's intent to assault any of those victims. We disagree.
¶ 21 "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). In State v. Ferreira, Division Three of this court noted, "`Evidence of intent ... is to be gathered from all of the circumstances of the case, including not only the manner and act of inflicting the wound, but also the nature of the prior relationship and any previous threats.'" 69 Wash.App. 465, 468-69, 850 P.2d 541 (1993) (quoting State v. Woo Won Choi, 55 Wash.App. 895, 906, 781 P.2d 505 (1989)). The Ferreira court further held that "a person who commits an act of violence with intent to place more than one person in fear of serious bodily injury may be found guilty of multiple offenses under the same criminal statute." 69 Wash.App. at 470, 850 P.2d 541. The Ferreira court concluded that, because the defendants in that case fired into an occupied house, there was sufficient evidence to find that they intended to assault all the likely occupants of the house. 69 Wash.App. at 469-70, 850 P.2d 541.
¶ 22 Here, there is sufficient evidence that the shooter intended to assault more than one person in the house. This evidence includes prior events and threats between the two groups[15] and the fact that the shooter shot out two windows at Matthew's house. Under Ferreira, because the shooter fired into the house intending to assault more than one victim within, there was sufficient evidence to find that he intended to assault all likely occupants of the house. And the shooter's act of shooting into the house was a substantial step towards assaulting every person within. That Keith, Linda, and Jacob were not actually harmed or put in apprehension of harm means that the shooter and his accomplices were guilty of attempted assault rather than a completed assault; the failure to complete the crime does not absolve Joseph of criminal culpability.
¶ 23 Because there was sufficient evidence of Joseph's (or his accomplice's) intent to assault Keith, Linda, and Jacob, it was not necessary for the jury to apply the transferred intent doctrine to find guilt on those charges. And the instructions did not allow the jury to apply transferred intent on counts V, VI, and VII, since the victims on those counts were not harmed. Joseph's claim fails.[16]
*819 ¶ 24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] For clarity, because this case involves multiple members of two different families, we use first names to refer to the people involved, intending no disrespect.
[2] U.S. Const. amend. VI.
[3] RAP 10.10.
[4] Andrew's friends included Aaronessa Devin, Dustin Williams, and Zach Gibbs-Churchley.
[5] Shaelyn's friends included Matthew Knowlton, Jacob Knowlton, and Mike Lawrence.
[6] Andrew testified that Zach's van was a light blue Oldsmobile or Mercury.
[7] The transferred intent instructions read, "If a person acts with intent to assault another, but the act harms a third person, the actor is also deemed to have acted with intent to assault the third person." Clerk's Papers (CP) at 339, 534.
[8] The accomplice liability instructions read, in pertinent part:

A person is an accomplice in the commission of Assault in the First Degree or Assault in the Second Degree if, with the knowledge that it will promote or facilitate the commission of an assault, he either:
(1) solicits, commands, encourages or requests another person to commit assault; or
(2) aids or agrees to aid another person in planning or committing an assault.
CP at 344, 539.
[9] The co-defendant statements instructions read, "You may consider a statement made out of court by one defendant as evidence against that defendant, but not as evidence against the other defendant." CP at 222, 525.
[10] The "to convict" instructions informed the jury that to convict, the jury must find that "the defendant assaulted [the victim] with a deadly weapon" and that "[t]his act occurred in the state of Washington." CP at 348, 350, 543, 545. No other elements were set forth in the "to convict" instructions.
[11] Joseph asserts that the standard of review for jury instructions is abuse of discretion. But we review errors of law in jury instructions de novo. State v. Montgomery, 163 Wash.2d 577, 597, 183 P.3d 267 (2008).
[12] RCW 9A.36.011.
[13] The court made clear that RCW 9A.36.011 "encompasses transferred intent" and decided the issue based on the statute, not on the common law doctrine of transferred intent. Elmi, 166 Wash.2d at 218, 207 P.3d 439. The second degree assault statute, RCW 9A.36.021, contains the same wording with regard to intent. Thus, Elmi applies equally to second degree assault.
[14] Joseph asserts that the standard of review on this issue is abuse of discretion, but he cites no authority to that effect. The proper standard of review on a motion to dismiss for insufficient evidence is whether a rational jury could have found guilt beyond a reasonable doubt. State v. Athan, 160 Wash.2d 354, 378 n. 5, 379, 158 P.3d 27 (2007).
[15] These events include Jacob's harassment of Andrew, Shaelyn and Matthew's reported pushing of Andrew, and numerous threats through text messaging and phone calls.
[16] In the unpublished portion of this opinion, we hold that (1) there was sufficient evidence to support the convictions, (2) the failure to sever the trials was not an abuse of discretion, (3) failure to dismiss the first degree assault charges did not violate double jeopardy, (4) any error in the instructions was harmless, and (5) David's confrontation clause rights were not violated.