FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| STATE OF WASHINGTON, | No. 44580-8-II |
| Respondent, | |
| v. | |
| SOKHA SUONG, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Sokha Suong appeals his convictions for one count each of unlawful imprisonment, first degree burglary, second degree assault, felony harassment, and ten misdemeanor counts of violating a domestic violence court order. He argues that the trial court erred by (1) refusing to sever the first group of charges from the domestic violence court order violations, (2) excluding a potential defense witness from the courtroom, and (3) giving "to-convict" instructions that failed to include every element of the domestic violence court order violation charges. We find no error and affirm.

## FACTS

A.    *Unlawful Imprisonment, Burglary, Assault, and Felony Harassment*

Jasmine Bogle worked overnight as a licensed practical nurse at the house of her client. One night, her ex-boyfriend, Sokha Suong, came to her workplace, asking if the two could resume their relationship. She refused and asked him to leave. When she later found him standing outside the house, she again asked him to leave. A few hours later, Suong knocked on the door and Bogle answered. Suong "got his foot in the doorway, put [Bogle] in . . . a

chokehold, and started dragging [her] to the kitchen." 2 Verbatim Report of Proceedings (VRP) at 159. Bogle could not breathe. In the kitchen, Suong began opening kitchen drawers. He grabbed a pair of scissors, held them to Bogle's throat, and said, "Bitch, if you don't do exactly what I fucking tell you to do, I'm going to fucking stab you." 2 VRP at 167. Bogle felt her life was threatened. Suong was charged in an amended information with one count each of first degree kidnapping, first degree burglary, second degree assault, and felony harassment.[1] Each of these charges bore a domestic violence sentencing aggravator.

B.    *No Contact Orders*

The trial court issued two orders restricting Suong from contacting Bogle. It issued an order for protection[2] and it also issued a domestic violence no contact order.[3] Despite these orders, Suong continued to contact Bogle. On August 23, Bogle received a collect call from someone identifying himself as Suong in Suong's own voice. Bogle did not accept the call. Her cell phone displayed a total of seven phone calls received from the same collect number. Police obtained a record of Suong's phone call history from Clark County Jail; it showed 17 outgoing phone calls to Bogle's phone number. When confronted with this information, Suong initially denied that the phone number he had tried to reach was Bogle's, but upon seeing the call log, he admitted that he had tried calling Bogle because "I just can't help it, I need to talk to her. I love her and all that she said happened was a lie." Clerk's Papers (CP) at 7.

---

[1] RCW 9A.40.020; RCW 9A.52.020; RCW 9A.36.021; RCW 9A.46.020.

[2] RCW 26.50.060.

[3] RCW 10.99.040.

No. 44580-8-II

Suong also wrote 17 letters and postcards to Bogle on different dates between August 23 and October 11. Bogle identified Suong's handwriting on the letters. Some of the letters were addressed to Bogle's residence but addressed to another woman's name—a woman who had never lived at Bogle's residence or received mail there. The letters were of a romantic nature apparently unrelated to the assault incident or the charges.

Consequently, the State charged Suong in an amended information with 10 misdemeanor counts of domestic violence court order violation.[4] The first count was based on the phone calls on August 23, and the remaining counts were based on the letters written to Bogle. Suong asserted no affirmative defenses; instead, he asserted a general denial to all charges.

C.    *Motion To Sever*

Suong moved to sever the misdemeanor domestic violence court order violation charges from the felony charges, arguing that it would be prejudicial to present the evidence of these crimes together.

At a hearing on the motion, the State represented to the trial court that the letters were romantic, not threatening, and the letters did not reference the assault incident. The State argued that the letters were admissible to show Suong's disposition towards this victim and a motivation for all the crimes. The State argued that the letters would help prove the essential element of the

---

[4] The charges did not explicitly state which order Suong was accused of violating. They read, in pertinent part: "That he, SOKHA SUONG, in the County of Clark, State of Washington, on or about [pertinent date], with knowledge that the Clark County Superior Court, had previously issued a protection order or no contact order pursuant to Chapter 10.99, 26.50 RCW in Cause No. 12-1-01473 -6 and /or 12-2-06477 -0, did violate the order while the order was in effect by knowingly violating the restraint provisions therein." CP at 27-29.

3

domestic violence aggravators that Bogle and Suong were in a relationship. The State also argued that some witnesses would be called to both trials if the charges were severed.

The trial court remarked that "the evidence in [the domestic violence court order violations] does not appear to me to be necessarily admissible" with regard to the four felony counts. 1 VRP at 58. The court also said, however, that the domestic violence court order violation evidence "bears some slight probative value with regard to whether [Bogle and Suong] had a previous relationship," which would help the jury determine whether they were household members for the domestic violence sentencing aggravators on the felony charges. 1 VRP at 59. The court noted that evidence of the attack would be inadmissible in a trial on the no-contact order violations alone. The court summarized that cross-admissibility of evidence on the felony and misdemeanor charges was "limited." 1 VRP at 60.

Next, the court observed that Suong had no special defenses to any of the charges. The court denied the motion to sever, ruling that the "factors outlined in *State v. Russell*, 125 Wn.2d 24, 62-3, 882 P.2d 747, 772-3 (1994), *State v. Lough*, 125 Wn.2d 847, 852, 889 P.2d 487, 494 (1995), and the need for judicial economy weigh in favor of joining all counts in one trial." CP at 66-67. The court instructed the jury in a limiting instruction to consider each count separately.

D.    *Exclusion of Potential Witness*

At trial, the State noticed that the defense investigator, Mr. Morrow, was present in the courtroom. The State suggested that Morrow was a potential defense witness, although his name did not appear on the witness list. The State moved to exclude Morrow from the courtroom because the trial court had excluded all witnesses. Suong insisted that he did not yet expect to call Morrow as a witness, but might do so in rebuttal. Suong argued that Morrow's presence

No. 44580-8-II

assisted with the proceeding "as far as getting relevant pages of transcripts, etcetera, in anticipation of cross-examination." 2 VRP at 144. The trial court excluded Morrow, finding that Suong could not commit to not calling Morrow for rebuttal testimony, and had not shown that Morrow's presence was necessary. Morrow left the courtroom.

E.   *Jury Instructions*

On each count of domestic violence court order violation, the trial court instructed the jury that:

> To convict the defendant of the crime of Violation of a Court Order . . . each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about [pertinent date], there existed a no-contact order applicable to the defendant;
> (2) That the defendant knew of the existence of this order;
> (3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting contact with a protected party; and
> (4) That the defendant's act occurred in the State of Washington, County of Clark.

CP at 127-36.

The jury instructions further provided: "A person commits the crime of Violation of a Court Order when he or she knows of the existence of a protection order or no-contact order, and knowingly violates restraint provisions of the order prohibiting contact with a protected party." CP at 125.

F.   *Convictions and Appeal*

At trial, the State's evidence supporting the felony charges included testimony from police officers who responded to the scene after Suong attacked Bogle. They testified that Bogle was very upset, that she told them what Suong had done, and that a floor mat was askew. Evidence also included testimony from Bogle's parents, who recalled seeing Bogle very upset

5

after the attack. Bogle testified about the attack, and also testified about receiving phone calls and letters from Suong. In support of the misdemeanor charges, the State also presented testimony from police officers who investigated Suong's mail and phone calls to Bogle. The court admitted Suong's letters and a call log as evidence of his contact with Bogle.

A jury found Suong guilty as charged of first degree burglary, second degree assault, and felony harassment, and also found him guilty of the lesser included offense of unlawful imprisonment, instead of kidnapping. The jury further found that Suong and Bogle were members of the same family or household, so each of these verdicts included a domestic violence sentencing aggravator. The jury also found Suong guilty as charged of ten counts of misdemeanor domestic violence court order violations. Suong appeals.

## ANALYSIS

### I. DENIAL OF MOTION TO SEVER DOMESTIC VIOLENCE COURT ORDER VIOLATIONS

Suong argues that the trial court erred by refusing to sever the misdemeanor domestic violence court order violation counts from the felony counts. He argues that (1) the evidence of the underlying felony charges was comparatively weaker than the evidence of the violation of no-contact orders, (2) his defenses were different for the two groups of charges, (3) the trial court's limiting instruction was too vague, and (4) evidence of Suong's violation of the no-contact orders constituted character evidence when considered alongside the felony charges. We hold that the trial court did not abuse its discretion in refusing to sever.

A.    *Standard of Review*

We review a trial court's denial of a motion to sever for manifest abuse of discretion. *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). The trial court abuses its

discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). Untenable grounds or reasons exist where the trial court relied on facts unsupported in the record, applied the wrong legal standard, or adopted a view that "no reasonable person would take." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

B.    *Refusal To Sever Not Manifestly Prejudicial*

Washington's liberal joinder rule allows charges to be joined in a charging document if they are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a)(2). *State v. Thompson*, 88 Wn.2d 518, 525, 564, P.2d 315 (1977), *overruled on other grounds by State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992). We construe the rule expansively to promote the public policy of conserving judicial and prosecution resources. *Bryant*, 89 Wn. App. at 864.

But even offenses properly joined under CrR 4.3 may be severed under CrR 4.4 whenever the trial court "determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b); *State v. Bythrow*, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). When seeking severance of joined charges, a defendant must demonstrate that a joined trial would be "so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.2d at 718. Examples of prejudice include circumstances where (1) the defendant has to present possibly conflicting defenses for the offenses, (2) the jury may infer guilt on one charge from evidence presented on another charge, or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge. *Bythrow*, 114 Wn.2d at 718.

No. 44580-8-II

Trial courts must consider four factors when determining whether the potential for prejudice requires severance: (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court's instructions to the jury to consider each count separately, and (4) the cross-admissibility of evidence for the other charges even if they were tried separately. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Finally, trial courts must weigh any residual prejudice against the need for judicial economy. *Russell*, 125 Wn.2d at 63.

Here, the trial court did not abuse its discretion by failing to sever the charges because the joint trial was not so manifestly prejudicial as to outweigh the concerns for judicial economy. We look to the four *Russell* factors and the trial court's consideration of them to determine whether the trial court abused its discretion.[5]

First, the evidence on the felony charges was not significantly weaker than the evidence of the misdemeanor no-contact order violations. Strong evidence supported both sets of charges. In support of the felony charges, police officers who responded to the attack incident at Bogle's workplace testified, as did Bogle, recalling that Suong attacked Bogle and Bogle was upset afterward. Bogle's parents testified that Bogle was upset immediately after Suong attacked her. In support of the no-contact order violation charges, the State presented police testimony, Bogle's testimony, and admitted the mail and phone records into evidence. Thus, there was not a

---

[5] The trial court generally considers a motion to sever before trial and before taking any testimony. While it is unusual to consider whether the trial court abused its discretion based on facts it could not have known at the time, our cases take into account the entire scope of the trial as it occurred, even after the trial court's ruling, in determining whether it was an abuse of discretion to deny a motion to sever. *See State v. Frasquillo*, 161 Wn. App. 907, 918, 255 P.3d 813 (2011); *State v. Sutherby*, 165 Wn.2d 870, 885, 204 P.3d 916 (2009).

disparity in the strength of the State's evidence on the felony charges as compared with the no-contact order violation charges that resulted in manifest prejudice due to the joint trial.

Second, Suong's defenses to each count were clear: he presented a general denial on all counts. He presented no special defenses. Therefore, Suong's defenses did not conflict in any way. Suong argues that he presented different defenses, but this assertion is not supported by the record or the briefing.[6] He generally denied all the charges. Suong did not testify in his own defense. Thus, there was no risk that the jury would have been confused by his defenses.

Third, the trial court instructed the jury to consider each count separately. Suong argues that the trial court's limiting instruction was too vague, because it should have told the jury "which evidence was associated with a specific group of counts and what evidence was not." Br. of Appellant at 16. But the trial court's instruction echoed the language of the third *Russell* prong exactly: it instructed the jury to consider each count separately. *Russell* does not require more specificity. *Russell*, 125 Wn.2d at 63. We presume that juries follow the trial court's instructions. *Russell*, 125 Wn.2d at 84. Therefore, the court's instruction to the jury reduced any potential prejudice from a joint trial.

Fourth, the evidence of the no-contact order violations would have been cross-admissible in a separate trial on the other counts. Suong argues that this evidence was character evidence regarding Suong's propensity to attack Bogle. But it was admissible for another purpose: to

---

[6] Suong's brief states, "In this case, the defense on the felony charges was that they simply didn't occur. By contrast, there was little defense to the no contact order charges other than attempting to point out errors in the admission of the state's documentary evidence. In fact there was little defense to the misdemeanor no contact order charges." Br. of Appellant at 15.

establish that Bogle and Suong were in a relationship for the purposes of proving the domestic violence aggravators.

Furthermore, a separate trial is not required even when some evidence is not cross-admissible. *Bythrow*, 114 Wn.2d at 720. Though evidence of the underlying attack may not have been admissible in a trial on the no-contact order violations, this factor alone does not require a separate trial. Where the issues are relatively simple and trial lasts only a few days, the jury can reasonably be expected to compartmentalize the evidence relating to separate charges. *Bythrow*, 114 Wn.2d at 721. Here, the trial lasted only four days and involved relatively simple issues. Where some evidence is not cross-admissible, the defendant bears the burden of demonstrating specific prejudice from a joint trial. 114 Wn.2d at 720. Suong has not done so here. Bare assertions of the risk of general prejudice do not suffice. *State v. Hentz*, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), *rev'd on other grounds*, 99 Wn.2d 538 (1983).

Finally, this court looks to the relative strength of the state's evidence to determine whether the inclusion of the contested evidence required severance. *Bythrow*, 114 Wn.2d at 721-22. Where the evidence is strong on each count, we presume that the jury did not base its finding of guilt on inadmissible evidence. 114 Wn.2d at 721-22. Here, as discussed above, the State's evidence was strong on both sets of counts. Because we presume that the jury was able to compartmentalize the evidence and because the evidence was strong, the joint trial here did not prejudice Suong.

Given these factors, any potential prejudice arising from a joint trial did not outweigh the substantial need for judicial economy. *Russell*, 125 Wn.2d at 63. Overall, while it is possible that Suong may have suffered some prejudice from a joint trial, the law requires that the

10

No. 44580-8-II

defendant demonstrate a *manifest* prejudice that denied him a fair trial. *Bythrow*, 114 Wn.2d at 718. Here, Suong has failed to meet his burden to prove that a joint trial was so prejudicial that it outweighed the benefits of judicial economy in this case.

Accordingly, Suong has failed to show that the trial court abused its discretion by refusing to sever the properly joined charges. Instead, it had reasonable grounds for deciding that each *Russell* factor did not support the need to sever charges. The trial court's decision was not manifestly unreasonable.

## II. EXCLUSION OF POTENTIAL WITNESS

Suong argues that the trial court abused its discretion by excluding his investigator from the courtroom for being a potential witness. We disagree.

A.    *Standard of Review*

We review the exclusion of potential witnesses from the courtroom for an abuse of discretion. *State v. Schapiro*, 28 Wn. App. 860, 867, 626 P.2d 546 (1981); *State v. Skuza*, 156 Wn. App. 886, 895-96, 235 P.3d 842 (2010).

B.    *No Abuse of Discretion in Excluding Potential Witness*

ER 615 provides:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of . . . (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause.

Therefore, the trial court retains discretion to remove witnesses unless a party shows that the person's presence is necessary.

11

Here, Suong had not included his investigator, Mr. Morrow, on the witness list, had not decided whether or not Morrow would testify, and could not rule out the possibility that he would call Morrow to testify. When the State requested that Morrow be removed, Suong bore the burden of demonstrating that Morrow's presence was reasonably necessary to the presentation of Suong's case. *See* ER 615(3). Suong argued that Morrow's presence helped Suong's case "as far as getting relevant pages of transcripts, etcetera, in anticipation of cross-examination." 2 VRP at 144. Because the trial court had sufficient reason to believe Morrow might be called as a rebuttal witness, it ordered him excluded. This decision was within the trial court's discretion. Suong failed to carry his burden of demonstrating the necessity of Morrow's presence because the reasons given for the necessity of his presence were weak: Suong argued that Morrow would help with administrative tasks that anyone with clerical skills could perform. Therefore, the trial court did not abuse its discretion by excluding Morrow. He was properly excluded because he was a potential defense witness and was not reasonably necessary to the presentation of Suong's defense.

III. SUFFICIENCY OF "TO-CONVICT" INSTRUCTIONS

Suong argues that the "to-convict" instructions for the domestic violence court order violations failed to include every element of the crimes charged because they excluded the element of proving the type of no-contact order allegedly violated. We disagree.

A.    *Standard of Review*

"[W]here a to-convict instruction omits an essential element of a charged crime, it is constitutionally defective and the remedy is a new trial unless the State can demonstrate that the omission was harmless beyond a reasonable doubt." *State v. Kirwin*, 166 Wn. App. 659, 669,

12

271 P.3d 310 (2012). The elements of a crime are those "'that the prosecution must prove to sustain a conviction.'" *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005) (quoting BLACK'S LAW DICTIONARY 559 (8th ed. 2004)). We review alleged errors in jury instructions de novo. *State v. Becklin*, 163 Wn.2d 519, 525, 182 P.3d 944 (2008).

B.     *All Elements Included*

Suong argues that the RCW provision under which the no-contact orders had been issued was a judicially-created element of the charged no-contact order violations, and therefore, the "to-convict" instructions failed to include an essential element of the charged offense. Suong cites two overturned decisions to support his argument, State v. Arthur, 126 Wn. App. 243, 108 P.3d 169 (2005),7 overruled by State v. Miller, 156 Wn.2d 23, 123 P.3d 827 (2005), and State v. Salas, 74 Wn. App. 400, 873 P.2d 578 (1994), rev'd by 127 Wn.2d 173 (1995).

Questions of law such as the validity of a no contact order are for the judge, not the jury, to decide. *Miller*, 156 Wn.2d at 31. The "existence of a valid court order is not a statutory element" of RCW 26.50.110, under which Suong was convicted. 156 Wn.2d at 31.

Here, the "to-convict" instructions for the no-contact order violations required the jury to find that Suong violated a "no-contact order applicable to" him. CP at 127-36. In *Miller*, the authority under which the no contact order was issued was not an essential element of the offense

---

[7] *Arthur* explicitly only addresses "the proper procedure to be used when a violation of [Former] RCW 26.50.110(5) [(2009)] is charged." 126 Wn. App. at 247. It analyzes only subsection (5), which is a felony violation requiring proof of prior violations. Suong was charged under the misdemeanor statute, subsection (1), which does not require proof of prior violations. *Arthur*'s reasoning regarding felony violations under subsection (5) does not apply to misdemeanors under subsection (1).

No. 44580-8-II

because it was not an element the State was required to prove. 156 Wn.2d at 31. Suong's

argument fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.

14