123 P.3d 827 (2005)
156 Wash.2d 23
STATE of Washington, Respondent,
v.
Clay Jason MILLER, Petitioner.
No. 76156-6.
Supreme Court of Washington, En Banc.
Argued September 15, 2005.
Decided December 1, 2005.
*828 Christopher Gibson, Nielsen, Broman, Koch, Seattle, for Petitioner/Appellant.
Timothy John Leary, Brian Martin McDonald, King County Prosecutor's Office, Seattle, For Appellee/Respondent.
CHAMBERS, J.
¶ 1 We are asked to decide if the validity of a domestic violence no-contact order is an element of the crime of violating such an order. If the validity of the order is an element of the crime, then it must, of course, be decided by a jury as a matter of fact.
¶ 2 We hold that the "existence" of a no-contact order is an element of the crime of violating such an order. However, the "validity" of the no-contact order is a question of law appropriately within the province of the trial court to decide as part of the court's gate-keeping function. The trial judge should not permit an invalid, vague, or otherwise inapplicable no-contact order to be admitted into evidence.
¶ 3 Because Clay Jason Miller has not shown that the trial judge erred in admitting this no-contact order, nor that the order was otherwise invalid or inapplicable, we affirm.

I

FACTS
¶ 4 Miller is a man not easily dissuaded from doing what he wants to do. The record reflects that Miller was convicted of violating a Renton District Court protective order in 1997 and again in 1998.
¶ 5 On April 24, 2001, Miller was arraigned on a fourth degree assault charge in Northeast District Court. At that time, the court issued a no-contact order prohibiting Miller from having contact with the victim, Diane Zaveruka, "directly or indirectly, in person, in writing, or by telephone, personally or through any other person." The order also provided in bold print, "YOU CAN BE ARRESTED EVEN IF ANY PERSON PROTECTED BY THE ORDER INVITES OR ALLOWS YOU TO VIOLATE THE ORDER'S PROHIBITIONS. YOU HAVE THE SOLE RESPONSIBILITY TO AVOID OR REFRAIN FROM VIOLATING THE ORDER'S PROVISIONS. ONLY THE COURT CAN CHANGE THE ORDER." Ex. 3 (Order Prohibiting Contact).
¶ 6 On June 23, 2001, while the no-contact order was in effect, a police officer stopped Miller's car for a defective taillight and discovered Miller and Zaveruka in the car together. Miller was arrested and taken to the Renton jail.[1]
¶ 7 Miller's two prior court order violation convictions elevated the charge to a felony. RCW 26.50.110(5). During pretrial proceedings, the defense and prosecution disputed whether the validity of the protective order was a question of law for the judge or a question of fact for the jury. At trial, Miller neither contested nor conceded the validity of the no-contact order. He stood on his contention that it was the State's burden to prove to the jury, beyond a reasonable doubt, the validity of the no-contact order. The trial court acknowledged that under existing case law, the validity of the order was an implied element of the crime. However, the trial judge declined to so instruct the jury on validity[2] or to include validity in the to-convict *829 instruction[3] in part because he concluded that this was "a perfect case" for the Court of Appeals to clarify who decided the validity of the underlying no-contact order. 5 Verbatim Report of Proceedings at 84.
¶ 8 The instruction given was based on the pattern jury instruction. It stated:
To convict the defendant of the crime of violation of a no-contact order, as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about June 23, 2001, the defendant willfully had contact with Diane Zaveruka;
(2) That such contact was prohibited by a no-contact order;
(3) That the defendant knew of the existence of the no-contact order;
(4) That the acts occurred in the State of Washington.
Clerk's Papers (CP) at 120; see also 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51, at 182 (Supp.1998). Thus, the to-convict instruction used did not mention the validity of the no-contact order. However, defense counsel did argue to the jury that the State had not established that the restraining order was valid. Miller was convicted and sentenced to 13 months confinement, perhaps to more carefully contemplate the wisdom of repeatedly violating court orders. The Court of Appeals affirmed his conviction, as do we. State v. Miller, 123 Wash.App. 92, 96 P.3d 1001 (2004).

II

ELEMENTS OF A CRIME
¶ 9 Bound in a nutshell, Miller argues that the validity of the no-contact order is an element of the crime of violating such court order. Since his counsel proposed an instruction that said so explicitly, he asks that his conviction be overturned. The State argues that the validity of the underlying order is not an element of the crime of violating such court order or, in the alternative, any error is harmless.
¶ 10 We review questions of law and jury instructions de novo. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995).
¶ 11 The elements of a crime are those facts "that the prosecution must prove to sustain a conviction." BLACK'S LAW DICTIONARY 559 (8th ed.2004). It is proper to first look to the statute to determine the elements of a crime. Cf. State v. Emmanuel, 42 Wash.2d 799, 820, 259 P.2d 845 (1953). The statute says in relevant part that "[w]henever an order is granted ... and the ... person to be restrained knows of the order, a violation .... is a class C felony if the offender has at least two previous convictions." RCW 26.50.110(1), (5). Nothing in the statute requires the State to prove the validity of a Washington no-contact order. Even if we were to find the statute to be ambiguous, justifying resort to extrinsic sources, the parties have not brought to our attention any evidence in the legislative history indicating intent that the validity of a no-contact order was intended to be an element of the crime, nor have we uncovered any such evidence by independent research. See Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 10, 43 P.3d 4 (2002) (inappropriate to resort to extrinsic sources if statute is clear). We do not find support in the statute for the position that a "valid" order is an element of the crime of violating a no-contact order.

III

IMPLIED ELEMENTS OF A CRIME
¶ 12 Courts have articulated nonstatutory elements of crimes under certain circumstances. *830 For example, in Boyer, this court held that the State was required to prove "guilty knowledge" in a prosecution for delivery of a controlled substance. State v. Boyer, 91 Wash.2d 342, 344, 588 P.2d 1151 (1979). We rested our holding on our conclusion that the legislature would not have intended a strict liability crime when "even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic." Id. Similarly, this court held almost 100 years ago that, despite statutory silence, an essential element of robbery was the fact the property was taken from the possession of another. State v. Hall, 54 Wash. 142, 144, 102 P. 888 (1909). The court found this element implied by a near eternity of common law and the common understanding of robbery. Id. Generally, we have concluded that nonstatutory elements are implied either because they fit within longstanding principles of law or are derived from our reasoned judgment as to legislative intent. E.g., Boyer, 91 Wash.2d at 344, 588 P.2d 1151; Hall, 54 Wash. at 144, 102 P. 888.
¶ 13 Miller primarily rests his argument that the validity of a no-contact order is an element of the crime upon several Court of Appeals cases which deemed validity an "implied element." Because we conclude that validity is not an element and out of respect for the opinions of the Court of Appeals (which, we believe, came to a correct result in both instances), we turn to a closer examination of those cases.
¶ 14 In Edwards, Division One reversed a felony conviction for violation of a no-contact order on the grounds that the duration of the order was not clear on its face and therefore the defendant could have reasonably believed it had expired at the time of the alleged violation. See City of Seattle v. Edwards, 87 Wash.App. 305, 307, 311, 941 P.2d 697 (1997). Finding that the defendant was essentially deprived of notice of the duration of the order, the court concluded that the State had not established the validity of the underlying order and vacated the conviction for failure to prove this "implicit element" of the crime. Id. at 308, 941 P.2d 697. We agree to some extent. In Edwards, the order was vague and was inadequate to give the defendant notice of what conduct was criminal and what conduct was innocent. The court was rightly loath to allow a person to be convicted under such circumstances. See generally Oliver Wendell Holmes, The Path of the Law, 10 HARV. L. REV. 457, 459 (1897) (noting that even the bad man is entitled to be able to predict what conduct might be forbidden).
¶ 15 Subsequently, Division Two was faced with a similar issue in State v. Marking, 100 Wash.App. 506, 997 P.2d 461 (2000). There the relevant statutes required that no-contact orders inform the person that "[y]ou can be arrested even if any person protected by the order invites or allows you to violate the order's prohibitions." Marking, 100 Wash. App. at 509, 997 P.2d 461 (quoting former RCW 10.99.040(4)(d)(1997)). Unfortunately, this statutorily required language did not appear on the no-contact order, and Marking apparently believed that he was not in violation of the no-contact order because the victim had consented to the contact. Marking, 100 Wash.App. at 508, 997 P.2d 461.
¶ 16 The Court of Appeals concluded that the statutory language was mandatory. Id. at 512, 997 P.2d 461. It accordingly held that the no-contact order was invalid because it did not comply with express mandatory statutory requirements, thus plainly presenting the question of whether a man could be convicted of a felony for violating an invalid order. Id. at 511-12, 997 P.2d 461.
¶ 17 Thus again, the court concluded that the order provided insufficient evidence that a crime had been committed and the conviction could not be sustained. Division Two held that "[t]he validity of a protective order is an implicit element of the crime of violation of such order." Id. at 509, 997 P.2d 461 (emphasis added) (citing Edwards, 87 Wash. App. at 308, 941 P.2d 697).
¶ 18 Because both the Edwards and the Marking courts referred to the validity of the court orders as "implied elements," the issue for subsequent courts has been couched in terms of whether the validity of the no-contact order was an element of the crime, to be proved to the jury beyond a reasonable doubt. But in Carmen, Division One determined that evaluation of the underlying no-contact *831 order was properly a question of law for the judge, not of fact for the jury. State v. Carmen, 118 Wash.App. 655, 665, 77 P.3d 368 (2003), review denied 151 Wash.2d 1039, 95 P.3d 352 (2004); but see State v. Arthur, 126 Wash.App. 243, 244, 108 P.3d 169 (2005) (rejecting Carmen.). Carmen rested in part on the comparative expertise of a judge to make reasoned judgments about the legal authority by which predicate no-contact orders were issued. Carmen also noted, properly, that "[t]he very relevancy of the prior convictions depended upon whether they qualified as predicate convictions under the statute. If they had not so qualified, the jury never should have been permitted to consider them." Carmen, 118 Wash.App. at 664, 77 P.3d 368.
¶ 19 In the case below, the Court of Appeals attempted to harmonize these holdings by not questioning whether the validity of the order was an element of the crime but by simply concluding that it should be decided by the trial court.
¶ 20 We respectfully disagree with the Court of Appeals and hold that the validity of the no-contact order is not an element of the crime. To the extent the cited cases are inconsistent, they are overruled. First, as discussed above, "valid" does not appear in relevant sections of the statute, RCW 26.50.110. Accordingly, the existence of a valid court order is not a statutory element of the crime. The legislature likely did not include validity as an element of the crime because issues concerning the validity of an order normally turn on questions of law. Questions of law are for the court, not the jury, to resolve. Hue, 127 Wash.2d at 92, 896 P.2d 682.
¶ 21 We also decline to find that the validity of the order is an implied element of the crime. While we are inclined to believe that the Court of Appeals reached appropriate results in Marking and Edwards, issues relating to the validity of a court order (such as whether the court granting the order was authorized to do so, whether the order was adequate on its face, and whether the order complied with the underlying statutes) are uniquely within the province of the court. Collectively, we will refer to these issues as applying to the "applicability" of the order to the crime charged. An order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order. The court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged.[4] Orders that are not applicable to the crime should not be admitted. If no order is admissible, the charge should be dismissed.
¶ 22 We recognize that there may also be issues of the sufficiency of the evidence of a violation of an order based upon the specific facts of the case. Issues of sufficiency relating to the order may be argued and resolved in the same manner as any other question relating to the sufficiency of the evidence.[5]

IV

SUMMARY AND CONCLUSION
¶ 23 We hold that the validity of the underlying no-contact order is not an element of the crime of violating such order. Only applicable no-contact orders which will support conviction on the crime charged are admissible. We also hold that invalid or deficient orders are properly excluded. As Miller has not shown that this order was invalid, deficient, or otherwise inapplicable to the crime charged, his conviction is affirmed, and the *832 cause remanded for any proceedings necessary.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, BRIDGE, OWENS, FAIRHURST, J.M. JOHNSON, JJ.
NOTES
[1] Still undeterred, Miller was charged with violating the same no-contact order on July 3, 2001. The two cases were joined for trial and then severed after trial began.
[2] Defense counsel proposed an instruction that would have instructed the jury:

A no-contact order is valid and properly issued when it is executed by a duly constituted court, in writing, contains the court's directives to the person subject to the order, and contains the following legend: "Violation of this order is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony. You can be arrested even if any person protected by the order invites or allows you to violate the court's prohibitions. You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order." In addition, a certified copy of the order shall be provided to the person protected by the order.
Clerk's Papers (CP) at 86.
[3] Defense counsel's proposed "to convict" instruction read in relevant part:

To convict the defendant of the crime of violation of a no contact order, each of the following elements of the crime must be proved beyond a reasonable doubt.
(1) That on or about June 23, 2001 the defendant willfully had contact with Diane Zaveruka;
(2) That such contact was prohibited by a valid no-contact order properly issued by a competent court;
(3) That the defendant knew of the existence of the no-contact order; and
(4) That the acts occurred in the State of Washington.
CP at 87 (emphasis added).
[4] We do not suggest that orders may be collaterally attacked after the alleged violations of the orders. Such challenges should go to the issuing court, not some other judge.
[5] Miller moves this court to strike the larger part of the State's Supplemental Brief on the theory that it raises new issues. See RAP 13.4(d) (requiring respondent to raise new issues in an answer, if at all); RAP 13.7(b) (limiting review to issues raised in petition and answer). The motion is denied. Properly read, the State has not raised new issues for review but has instead responded to arguments made in Miller's petition and reasonably developed issues and arguments raised below.