# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51861-9-II |
| Respondent, | |
| v. | |
| BRANDON LARMAR BROOKS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Brandon Brooks appeals from his conviction of felony violation of a court order, asserting that (1) his defense counsel provided ineffective assistance after the trial court dismissed his felony harassment charge by failing to move for a mistrial or, in the alternative, requesting a jury instruction to disregard certain evidence related to that charge; (2) the trial court erred by failing to provide the jury with a unanimity instruction; (3) the trial court's to-convict jury instruction lowered the State's burden of proof by failing to include all the essential elements of the offense; (4) the trial court erred by imposing a combined period of incarceration and community custody that exceeded the statutory maximum for the offense; and (5) the trial court erred by imposing a criminal filing fee and DNA collection fee as part of his legal financial obligations (LFOs).  The State concedes that Brooks's sentence exceeded the statutory maximum for his offense, but asserts that the sentencing error is moot because the trial court entered an order striking the community custody term from Brooks's sentence.

We affirm Brooks's conviction but remand to the trial court to strike the criminal filing fee and to reconsider whether to impose the DNA collection fee.[1]

FACTS

Brooks is the subject of a court order prohibiting him from contact with Leslie Hammitt.[2] Brooks has two prior convictions for violation of a court order.

In 2017, Hammitt moved to the Parkwood Terrace Apartments in Bremerton. Jacqueline Brown is the community manager of the Parkwood Terrace Apartments. On October 4, Brown saw Hammitt walking through the parking lot toward her apartment with a man whom Brown did not know. Brown then saw the same man walking in the parking lot by himself.

Five to ten minutes later, Tory Riley, an apartment maintenance worker, called Brown and told her about a situation. Based on the phone call with Riley, Brown became concerned and went to Hammitt's apartment to confront her about her companion. As she approached Hammitt's apartment, Brown could hear people arguing inside. Brown knocked on the door, and Hammitt answered. Brown asked Hammitt whether there was someone inside her apartment and told Hammitt that someone had threatened a maintenance worker. After Brown told Hammitt that she was going to call 911, the same man Brown had seen earlier exited the apartment and started to run away. Brown called 911 and provided a description of the man.

Police stopped a man matching the description provided by Brown about four blocks away from the apartment complex. The man identified himself as Brooks. After viewing

---

[1] We do not consider Brooks's argument that his sentence exceeded the statutory maximum because the issue is moot.

[2] An alternate spelling of Hammit is used in the September 16, 2016 order prohibiting contact.

Brooks at the scene, Brown told officers that he was the same man she had seen in the parking lot and later at Hammitt's apartment. The State charged Brooks with felony violation of a court order and felony harassment. The matter proceeded to a jury trial.

At trial, witnesses testified consistently with the facts above. Additionally, Bremerton Police Officer Jennifer Corn testified that she went to the Parkwood Terrace Apartments in response to a report of a man threatening a maintenance worker with a gun. Officer Corn stated that when she spoke with Riley, his voice was shaky and his hands were trembling.

Bremerton Police Officer Jeffrey Inklebarger testified that he had located and detained Brooks near the apartment complex. When asked why he detained Brooks, Inklebarger said that there had been a report of a threat with a weapon.

Brown testified about her conversation with Hammitt, stating, "I asked [Hammitt] if somebody was in her home because someone had just threatened my maintenance person, and I didn't want that to happen." 2 Verbatim Report of Proceedings (VRP) (Nov. 28, 2017) at 201-202. Later, Brown similarly testified that she had told Hammitt, "You have somebody here that threatened one of my maintenance staff, and I can't have that." 3 VRP at 217. The following exchange took place during Brown's cross-examination:

> [Defense counsel]: It sounds like typically you have a lot going on in your day?
> [Brown]: Correct.
> [Defense counsel]: This is an event that's sort of interrupting that, and you were aggravated about that?
> [Brown]: Sure. Somebody threatened to shoot someone. I had problems with that.

3 VRP at 225. Hammitt did not testify at trial.

3

The trial court admitted as trial exhibits a September 16, 2016 court order prohibiting Brooks from contacting Hammitt, and two judgment and sentence documents showing that Brooks had twice been convicted of violation of a court order.

On the third day of trial, the State told the trial court that Riley was not available to testify at trial. Instead of seeking a continuance, the State moved to dismiss Brooks's felony harassment charge.

Regarding the violation of a no contact order charge, the trial court provided a to-convict jury instruction that stated in relevant part:

> To convict the defendant of the crime of violation of a no-contact order, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about October 4, 2017 there existed a no-contact order applicable to the defendant;
> (2) That the defendant knew of the existence of this order;
> (3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting contact with a protected party or provision of the order excluding the defendant from a residence;
> (4) The defendant had twice been previously convicted for violating the provisions of a court order; and
> (5) That the acts occurred in State of Washington.

Clerk's Papers (CP) at 68. The parties did not request, and the trial court did not provide, a unanimity instruction.

During closing, the State argued:

> So you have testimony from Jackie Brown that the defendant was at the Parkwood Apartments on October 4. She saw he and Leslie Hammitt walking through the parking lot together while she was checking the mail. And then there's some intervening events that we won't worry about anymore, and she goes to Leslie Hammitt's apartment and sees the defendant again. In that—at that point he is in her apartment. So both of those factors, if you believe are true, violate both the provisions of direct contact with Leslie Hammitt and also excluding him from her residence.
>      . . . .

> The only thing that's relevant in this case is whether or not the defendant was there with [Hammitt]. And you have Jackie Brown who testifies not just as to a glance but that she actually watched these two walking through the parking lot together and then also watched as the defendant walked out of her apartment.
>
> His presence in her apartment is a violation of the no-contact order. His walking with her in the parking lot is a violation of a no-contact order.

3 VRP at 317-18, 342.

The jury returned a verdict finding Brooks guilty of felony violation of a court order. At sentencing, the trial court imposed 60 months of incarceration and 12 months of community custody. The trial court stated its intention at sentencing to waive all nonmandatory LFOs. It imposed a $200 criminal filing fee and a $100 DNA sample fee.

Brooks appeals from his conviction and sentence. After Brooks filed his opening brief in this appeal, the trial court entered an order amending his sentence to strike the community custody term.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Brooks first contends that his defense counsel was ineffective for failing to move for a mistrial after the trial court dismissed his felony harassment charge. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Because both prongs must be met, a failure to show either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

To establish prejudice, the defendant must show that there is a reasonable probability that the outcome of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. In the context of Brooks's claim, he must show a reasonable probability that the trial court would have granted a mistrial had defense counsel requested it.

A trial court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). When determining whether a trial irregularity warrants a mistrial, courts examine (1) whether the irregularity was serious enough to affect the trial's outcome, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard it. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989).

Brooks fails to demonstrate that his defense counsel's decision not to request a mistrial resulted in prejudice because it is unlikely that the trial court would have granted a mistrial had defense counsel requested it. Brooks argues that a mistrial was warranted because the State would not have been permitted to admit evidence that he threatened Riley with a gun absent his felony harassment charge. Specifically, this evidence includes Brown's testimony that she told

Hammitt that someone had threatened a member of her staff, Brown's statement on cross-examination that she was aggravated because someone had threatened to shoot someone, and Officer Inklebarger's testimony that he detained Brooks because there had been a report of a threat with a weapon.

Assuming for the sake of argument that the above testimony was not admissible as res gestae evidence of Brooks's violation of a court order,[3] and thus constituted a trial irregularity following the dismissal of his felony harassment charge, such irregularity was not so serious as to affect the outcome of Brooks's trial. The details of Brooks's alleged threat to Riley with a weapon were not revealed at trial, and the facts regarding Brooks's alleged threat had no bearing on the factual determination of whether he violated a court order by contacting Hammitt. The evidence that Brooks had violated a court order was strong; Brown testified that she twice saw Brooks with Hammitt. Testimony that Brooks had allegedly threatened a third party would not impact a jury's finding on whether he contacted Hammitt in violation of a court order or on whether he had twice been previously convicted of violating a court order. Accordingly, Brooks could not show the requisite prejudice justifying a mistrial and, as such, he cannot show that the trial court likely would have granted a mistrial had defense counsel requested it. *Emery*, 174 Wn.2d at 765.

Brooks argues in the alternative that his defense counsel was ineffective for failing to request the trial court to instruct the jury to not consider the evidence of his alleged threats. But Brooks cannot show either deficient performance or resulting prejudice based on defense

---

[3] *See, e.g.*, *State v. Grier*, 168 Wn. App. 635, 645-51, 278 P.3d 225 (2012) (trial court did not abuse its discretion by admitting res gestae evidence of defendant's name-calling and threats with a gun near the time of her murder of the victim).

counsel's decision not to seek such an instruction. First, defense counsel could have reasonably declined requesting such an instruction as to avoid emphasizing evidence of Brooks's alleged threats where such threats bore little relation to his violation of a court order charge. This is a legitimate trial strategy, and therefore Brooks cannot show that his counsel performed deficiently for failing to request the instruction. *See, e.g.*, *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013) ("[I]t can be a legitimate trial tactic to withhold an objection to avoid emphasizing inadmissible evidence."). Moreover, because evidence of Brooks's alleged threats bore no relation to the jury's finding on whether he violated a court order by contacting Hammitt, he cannot show any prejudice resulting from defense counsel's decision not to seek an instruction telling the jury to not consider evidence of his alleged threats. Accordingly, Brooks fails to demonstrate ineffective assistance of counsel.

## II. UNANIMITY JURY INSTRUCTION

Next, Brooks contends that his right to a unanimous verdict was violated by the trial court's failure to provide the jury with a unanimity instruction for his felony violation of a no contact court order charge. He argues that a unanimity instruction was required because the State alleged multiple acts that could have constituted a violation of the court order prohibiting his contact with Hammitt. We disagree.

As an initial matter, Brooks neither requested the trial court to provide a unanimity jury instruction nor objected to the failure of the trial court to provide one. And we generally will not review claims raised for the first time on appeal unless the party claiming the error can show the presence of an exception to that rule, such as a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). The failure to

provide a unanimity instruction, when required, is an error of constitutional magnitude. *State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013). Because this was not a multiple acts case for which the trial court was required to provide a unanimity instruction, Brooks cannot show manifest constitutional error permitting him to raise this issue for the first time on appeal under RAP 2.5(a)(3).

For a criminal defendant's conviction to be constitutionally valid, a unanimous jury must conclude that the accused committed the criminal act charged. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014). When the State alleges that the defendant committed multiple acts, any one of which could constitute the crime charged, the jury must unanimously agree on which act constituted the crime. *Kitchen*, 110 Wn.2d at 411. "Multiple acts tend to be shown by evidence of acts that occur at different times, in different places, or against different victims." *Locke*, 175 Wn. App. at 802. Under these circumstances, unless the State elects which act it is relying on to support a conviction, the trial court must instruct the jury that it must unanimously agree that the same underlying criminal act has been proven beyond a reasonable doubt. *Kitchen*, 110 Wn.2d at 411.

But a defendant is not entitled to a unanimity instruction if the State presents evidence of multiple acts that constitute a single continuing course of conduct. *Locke*, 175 Wn. App. at 803. "We review the facts in a commonsense manner" to determine whether a particular defendant's acts constitute a single continuing course of conduct. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). "A continuing course of conduct requires an ongoing enterprise with a single objective." *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

In *State v. Brown*, 159 Wn. App. 1, 15, 248 P.3d 518 (2010), Division One of this court held that the defendant's multiple acts forming the basis for violation of a no contact court order constituted a single continuing course of conduct where the time separating the acts was short, the acts involved the same parties, the acts took place at same location, and the defendant committed the acts for the same ultimate purpose (to contact and confront the protected party of the no contact court order). Likewise here, viewing the facts in a commonsense manner, we conclude that Brooks's multiple acts constituted a single continuing course of conduct for which no unanimity instruction was required.

Here, Brown saw Brooks with Hammitt in the apartment complex parking lot walking toward Hammitt's apartment. Although Brown briefly saw Brooks alone in the parking lot, five to ten minutes later Brown went to Hammitt's apartment and saw Brooks exit the apartment. As in *Brown*, Brooks's multiple acts (walking with Hammitt in the parking lot and his presence in her apartment) were separated by a short amount of time, involved the same parties (Brooks and Hammitt), took place in the same general location (Hammitt's apartment and the apartment parking lot), and were committed for the same ultimate purpose (to contact Hammitt). 159 Wn. App. at 15. Because Brooks's multiple acts constituted a continuing course of conduct, the trial court was not required to provide a unanimity jury instruction. Accordingly, Brooks fails to demonstrate a manifest constitutional error allowing him to raise this claim for the first time on appeal under RAP 2.5(a).

### III.  TO-CONVICT INSTRUCTION

Next, Brooks contends that the to-convict instruction for felony violation of a court order lowered the State's burden of proof by failing to include all the essential elements of the offense.

Specifically, Brooks argues that the to-convict instruction was required to include the essential element that he had twice been previously convicted of violating a court order issued under a specific statutory chapter.  We disagree.

We review the adequacy of a to-convict instruction de novo.  *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005).  In general, "a 'to-convict' instruction must contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence."  *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) (quoting *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953)).

Under former RCW 26.50.110(5) (2017), violation of a court order is elevated to a felony "if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020."  Brooks argues that this provision required the jury to find that his two previous convictions were for violating a court order issued under one of the enumerated chapters and, thus, the to-convict instruction was deficient for failing to include as an essential element that he had twice been convicted of violating a court order issued under one of the enumerated chapters.  This argument fails because the validity of an underlying court order is not an element of felony violation of a court order.

In *State v. Miller*, 156 Wn.2d 23, 31, 123 P.3d 827 (2005), our Supreme Court held that the statutory authority under which a no contact court order was issued is not an element of felony violation of a court order that the State is required to prove beyond a reasonable doubt.  *See also State v. Ingram*, 9 Wn. App. 2d 482, 498-500, 447 P.3d 192 (2019) (Extending *Miller* to

hold that the validity of a foreign protection order is not an element of violation of a court order.). Rather, the validity of an underlying court order is a question of law to be resolved by the trial court. *Miller*, 156 Wn.2d at 31.

> The court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged. Orders that are not applicable to the crime should not be admitted. If no order is admissible, the charge should be dismissed.

*Miller*, 156 Wn.2d at 31 (footnote omitted). Because the validity of an underlying court order is not an element that the State was required to prove felony violation of a court order, Brooks's claim that the to-convict instruction lowered the State's burden of proof fails.

IV. SENTENCE

Next, Brooks contends that his imposed incarceration term, when combined with his community custody term, exceeds the statutory maximum for his offense. We agree, but hold that the sentencing error is moot in light of the trial court entering an order amending Brooks's sentence to strike the community custody term.

A trial court may only impose a sentence that is authorized by statute. *State v. Miller*, 159 Wn. App. 911, 930-31, 247 P.3d 457 (2011). Felony violation of a court order is a class C felony. Former RCW 26.50.110(5). RCW 9A.20.021(1)(c) limits the maximum sentence that the trial court could impose for a class C felony to 60 months. RCW 9.94A.701(9) requires a trial court to reduce a community custody term "whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime." *See also State v. Bruch*, 182 Wn.2d 854, 866, 346 P.3d 724 (2015) (trial court must reduce the period of community custody so as not to exceed statutory maximum sentence).

Here, the trial court originally sentenced Brooks to 60 months of confinement and 12 months of community custody. But on September 13, 2018, with this court's permission, the trial court entered an order amending Brooks's sentence to strike the community custody term. RAP 7.2(e). Because Brooks's amended sentence of 60 months of incarceration is now within the statutory maximum for his offense, his contention is moot, and we do not further address it. *See State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995) (An issue is moot "if a court can no longer provide effective relief.").

## V. LEGAL FINANCIAL OBLIGATIONS

Finally, Brooks contends in a supplemental brief that we should reverse the trial court's imposition of a $200 criminal filing fee and $100 DNA collection fee as part of his legal financial obligations.

Recent legislation prohibits trial courts from imposing on indigent defendants criminal filing fees and prohibits a trial court from imposing a DNA collection fee if the offender's DNA has already been collected as the result of a prior conviction. RCW 36.18.020(2)(h); RCW 43.43.7541. The recent legislation applies prospectively to defendants like Brooks, whose cases were pending appellate review and were not yet final when the legislation was enacted. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The trial court found Brooks indigent and stated its intention to waive all nonmandatory LFOs. Although the record shows that Brooks has previously been ordered to provide a biological sample for DNA testing as a result of earlier convictions, the record does not definitively show whether he had provided a sample as ordered. Therefore, we remand to the

13

No. 51861-9-II

trial court to strike the criminal filing fee and to reconsider whether imposition of the DNA

collection fee is appropriate under RCW 43.43.7541.

We affirm Brooks's conviction but remand to the trial court to strike the criminal filing

fee and to reconsider whether to impose the DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Melnick, J.

Cruser, J.

14