IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>        v.<br><br>KELLI GONZALES,<br><br>                Appellant. | No. 80019-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — A jury convicted Kelli Gonzales of 20 counts of identity theft for writing herself duplicate payroll checks as the office manager and bookkeeper for Bob Oates Sewer Rooter LLC (BOSR). She appeals her judgment and sentence, asserting that the trial court erred when it (1) failed to include the element that she unlawfully used another's financial information in the to-convict instruction, (2) admitted Bob Oates's testimony that he saw the QuickBooks screen summary of the checks she issued to herself, and (3) excluded testimony she contends showed evidence of Oates's dishonesty and bias.

Because the identity theft statute is unambiguous and does not include an element of unlawful use of another's information, the to-convict instruction was proper. Furthermore, because we review a trial court's decision to exclude or admit evidence for an abuse of discretion and any error by the trial court in admitting testimony and limiting cross examination was harmless, we affirm Gonzales's convictions.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In 2006, Oates, the owner of BOSR, hired Gonzales to manage BOSR's office. Gonzales was responsible for, among other tasks, answering the phones, authorizing payroll, and keeping the company's books. Gonzales also kept track of advances that Oates allowed his employees to take from their paychecks. The employees could receive an advance payment of up to $500 from future earnings. After the employee took an advance, Oates would have Gonzales deduct $100 from every paycheck until the balance was repaid.

On November 11, 2013, Oates fired Gonzales. After his new bookkeeper, Ingrid Florian, reviewed QuickBooks, she showed Oates the QuickBooks reports documenting the checks that Gonzales had issued to herself. After he requested and received his bank statements and copies of the at-issue checks, Oates filed a police report, alleging that Gonzales had stolen over $200,000 via over 250 unauthorized checks.

In January 2014, Detective Keith Salas began investigating Oates's allegations. After the investigation began, Oates amended his allegation, reducing the amount of unauthorized checks to approximately $85,000. Detective Salas then obtained a warrant for Gonzales's bank records. Upon inspection, the records revealed that Gonzales had deposited checks that Oates alleged he did not authorize.

In December 2016, the State charged Gonzales with one count of first degree theft and 10 counts of second degree identity theft. However, in July 2018, the State amended the information to add 3 counts of second degree

identity theft and 17 counts of first degree identity theft. In March 2019, the court dismissed the first degree theft charge because the statute of limitations had run. Thereafter, the State amended the information a second time removing the theft charge and charging Gonzales with 15 counts of first degree identity theft and 14 counts of second degree identity theft.

Prior to trial, Gonzales moved to admit evidence pursuant to ER 607, the Sixth Amendment, and ER 404(B). Specifically she sought to impeach Oates with evidence that (1) Oates "engaged in a tax fraud scheme of under-reporting business income," (2) he owed tax liabilities of over $100,000, (3) he "sought to falsify his own business records so that an employee . . . would be covered by worker's compensation," and (4) Oates received an insurance payment for alleging that Gonzales stole from him. The trial court denied Gonzales's motions to admit the evidence, concluding that the proffered evidence was collateral to the issues at trial. Gonzales also moved to exclude QuickBooks reports or records because the physical QuickBooks records had not been preserved. Determining that no hearsay exception applied to the records, the court granted this motion.

At trial, Gonzales argued that she was authorized to issue herself the checks pursuant to Oates's policy allowing employees to take advances. Oates testified that he authorized only one check per pay period and that Gonzales requested an advance "[t]wo or three times." He also testified, however, that he did not keep a record of which checks he authorized. The State admitted evidence that on numerous occasions, Gonzales wrote herself several

3

paychecks for the same pay period as well as checks with no assigned pay period attached. Specifically, the State's exhibits at trial included a copy of every check and a summary of all of the checks that Gonzales issued to herself. The exhibits showed that Gonzales issued herself sometimes four or more paychecks per pay period over 30 pay periods.

The jury found Gonzales guilty of 14 counts of first degree identity theft and 6 counts of second degree identity theft. The jury acquitted her of 1 count of first degree identity theft and 5 counts of second degree identity theft, while deadlocking on 3 counts of second degree identity theft. Gonzales appeals.

ANALYSIS

To-Convict Instruction

Gonzales contends that the to-convict instruction was constitutionally deficient because it omitted an essential element, i.e., that she had *unlawfully* used another's financial information. We disagree.

"'We review alleged errors of law in jury instructions de novo.'" State v. Nelson, 191 Wn.2d 61, 69, 419 P.3d 410 (2018) (quoting State v. Boss, 167 Wn.2d 710, 716, 223 P.3d 506 (2009)). "A 'to convict' instruction must contain all the elements of the [charged] crime." Nelson, 191 Wn.2d at 74 (quoting State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997)). "The elements of a crime are those facts 'that the prosecution must prove to sustain a conviction.'" State v. Miller, 156 Wn.2d 23, 27, 123 P.3d 827 (2005) (quoting BLACK'S LAW DICTIONARY 559 (8th ed. 2004)). "It is proper to first look to the statute to determine the elements of a crime." Miller, 156 Wn.2d at 27.

In Miller, a jury convicted Clay Jason Miller of violating a no-contact order. Miller, 156 Wn.2d at 26-27. At trial, Miller contended that the no-contact order's validity was an element of the crime and therefore a determination to be left to the jury. Miller, 156 Wn.2d at 24, 26. But the trial court refused to instruct the jury accordingly. Miller, 156 Wn.2d at 26. On appeal, our Supreme Court concluded that because the criminal statute, by its plain language, does not include the no-contact order's validity as an element of the crime, it is not a necessary element and can be determined by the court. Miller, 156 Wn.2d at 31. Thus, it found no issue with to-convict instruction. Miller, 156 Wn.2d at 31.

Similarly, in State v. Wu, a jury convicted Ken Wu of, among other crimes, felony driving under the influence (DUI), which required the jury to find that Wu had "within 10 years of his present arrest, four 'prior offenses.'" 194 Wn.2d 880, 882, 453 P.3d 975 (2019). The statute defined a prior offense as a conviction, including reckless driving, resulting from a charge that was originally filed as a DUI, physical control of a vehicle while under the influence, or an equivalent local ordinance. Wu, 194 Wn.2d at 884. Wu argued that the State was required—and failed—to prove beyond a reasonable doubt that his prior offenses for reckless driving involved alcohol. Wu, 194 Wn.2d at 883. Our Supreme Court concluded that the plain language of the statute required the State to prove only that the conviction was originally charged as a DUI or the equivalent. Wu, 194 Wn.2d at 891. The court held that because the statute did not include a requirement that the prior offenses involved alcohol, it was not a necessary element. Wu, 194 Wn.2d at 891.

5

Here, under RCW 9.35.020(1), "[n]o person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." Nowhere in the statute does the term "unlawfully" appear; that is, the statute does not require the State to prove that Gonzales unlawfully obtained, possessed, used, or transferred another's financial information. To add an unlawfulness element, the court would have to "add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). We will not do so. See, e.g., State v. Dailey, 174 Wn. App. 810, 811, 818, 300 P.3d 834 (2013) (declining to find that the statute for vehicular assault by driving under the influence requires an implied knowledge element where the driver is alleged to be under the influence of prescription drugs). In short, where the defendant alleges an element that does not appear in the statute, "'[it] is not a statutory element of the crime'"[1] and is not required in the to-convict instruction. Therefore, here, the to-convict instruction was proper.

Gonzales disagrees and relies on State v. Boyer, 91 Wn.2d 342, 588 P.2d 1151 (1979), for the proposition that an element that is not included in the statute may nonetheless exist. In Boyer, a jury convicted Dennis Alan Boyer of delivery of a controlled substance. 91 Wn.2d at 342. The criminal statute provided, "'[I]t is unlawful for any person to manufacture, deliver, or possess with intent to

---

[1] Wu, 194 Wn.2d at 890 (alteration in original) (quoting Miller, 156 Wn.2d at 31).

manufacture or deliver, a controlled substance.'" Boyer, 91 Wn.2d at 344 (quoting RCW 69.50.401(a)). Boyer challenged the jury instruction, which allowed the jury to presume from Boyer's delivery of the substance itself that Boyer had the requisite intent to deliver the controlled substance. Boyer, 91 Wn.2d at 343. The court determined that "guilty knowledge, an understanding of the identity of the product being delivered, is a part of the crime," because "without the mental element of knowledge, even a postal carrier would be guilty of the crime were he innocently to deliver a package which in fact contained a forbidden narcotic." Boyer, 91 Wn.2d at 344. It concluded that "[s]uch a result is not intended by the legislature," and "guilty knowledge is intrinsic to the definition of the crime itself." Boyer, 91 Wn.2d at 344.

Boyer is distinguishable because, there, the mens rea element was absent from the jury instructions, allowing the jury to infer from the act itself that Boyer had the requisite mens rea. Here, the jury instructions did not allow the jury to infer the requisite mens rea from Gonzales's actions. Rather, the instructions required the jury to find that Gonzales *knowingly* obtained, possessed, used, or transferred the financial information of another with the *intent to commit any crime*. And although a court may conclude "that nonstatutory elements are implied either because they fit within longstanding principles of law or are derived from our reasoned judgment as to legislative intent," neither justification to find a nonstatutory element exists here. Miller, 156 Wn.2d at 28. Thus, the concern raised in Boyer does not apply, and we are not persuaded.

7

<u>Oates's Testimony Regarding QuickBooks</u>

Gonzales contends that Oates testified in violation of the trial court's pretrial decision to exclude evidence of BOSR's QuickBooks reports. To this end, she contends that Oates's testimony constituted hearsay. We disagree.

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted" and is inadmissible absent an exception. ER 801(c), ER 802. But "a statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement." <u>State v. Edwards</u>, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). "Whether or not the statement here was hearsay is a question of law we will review de novo." <u>Edwards</u>, 131 Wn. App. at 614.

Here, Oates testified that when Florian was hired, she discovered duplicate checks made to Gonzales and notified Oates. The State then asked Oates, "[D]id you see checks that had been issued to Ms. Gonzales that you did not authorize?" And Oates responded, "I [saw] the QuickBooks computer screen of multiple checks made out to Ms. Gonzales." The State's question was not an attempt to elicit the QuickBooks information from Oates. And Oates's answer was admitted, not to prove that duplicate checks existed, but to explain how he came to report the incident to the police.[2] The State did not seek to prove what was in the QuickBooks reports via this statement. Indeed, it did not need to because it had copies of the duplicative checks. Thus, the testimony was not hearsay, and the trial court did not err. <u>See, e.g.</u>, <u>State v. Chenoweth</u>, 188 Wn.

_____

[2] Following Oates's response, the State asked whether Oates received statements and copies of the checks and whether and why he called the police.

App. 521, 534, 354 P.3d 13 (2015) (concluding that testimony of the victim's allegations was "not offered for the truth of the allegations, but to show what the witnesses did next," including filing police reports and beginning an investigation, and "to provide a basis for their testimony").

Gonzales disagrees and contends that the admission of the testimony violated the pretrial order excluding evidence of QuickBooks. However, Gonzales moved in limine—and the trial court granted the motion—to exclude extrinsic evidence of the QuickBooks *summaries and reports*. Thus, Oates's testimony evidence of what he saw was not subject to the court's pretrial ruling.

Impeachment Evidence

Gonzales asserts that the trial court erred when it excluded evidence that (1) Oates had unpaid taxes, (2) Oates had a reputation for tax evasion, (3) Oates attempted to aid an employee to submit a fraudulent workers' compensation claim, and (4) Oates submitted and received a claim from his business insurer on the basis that Gonzales had committed theft. We conclude that the trial court abused its discretion with regard to Oates's insurance claim.

"[S]pecific instances of a witness's conduct, introduced for the purpose of attacking [their] credibility, . . . may 'in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness.'" State v. O'Connor, 155 Wn.2d 335, 349, 119 P.3d 806 (2005) (quoting ER 608(b)). "[T]he trial court may consider whether the instance of misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial." O'Connor, 155 Wn.2d at 349. We

9

review the trial court's decision to exclude such evidence for an abuse of discretion. See Boyd v. Kulczyk, 115 Wn. App. 411, 416, 63 P.3d 156 (2003). And an "'[a]buse of discretion' means 'no reasonable judge would have ruled as the trial court did.'" State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017) (quoting State v. Mason, 160 Wn.2d 910, 934, 162 P.3d 396 (2007)). Admission of credibility evidence "'is highly discretionary under ER 608(b).'" State v. Lee, 188 Wn.2d 473, 488, 396 P.3d 316 (2017) (quoting State v. Kunze, 97 Wn. App. 832, 859, 988 P.2d 977 (1999)).

We first conclude that the trial court did not abuse its discretion in finding that the evidence of BOSR's unpaid taxes, of Oates's reputation for tax evasion, or of Oates's alleged fraudulent workers' compensation claim were not relevant to Oates's credibility on the material issues at the trial. Specifically, a reasonable court could find that such evidence was not probative as to whether or not Oates authorized Gonzales's duplicate checks. See, e.g., Lee, 188 Wn.2d at 489 (Evidence of a witness's lying "is not always relevant, particularly when that evidence is unrelated to the issues in the case."). And witnesses cannot be impeached on matters collateral to the principal issues being tried. State v. Oswalt, 62 Wn.2d 118, 120, 381 P.2d 617 (1963). Therefore, because we cannot conclude that no reasonable judge would have limited Gonzales's cross-examination of Oates and Florian on these matters, the trial court did not abuse its discretion.

However, the trial court abused its discretion when it prevented Gonzales from eliciting testimony about Oates's insurance claim based on Gonzales's

alleged theft. Evidence of bias is always relevant.[3] Evidence of Oates's

insurance claim based on Gonzales's theft was evidence of his potential

motivation to file a police report against Gonzales. As the victim of the crime,

Oates was a crucial witness for the State, and there was no other impeachment

evidence. Therefore, the trial court abused its discretion when it concluded that

the evidence was collateral to the matters at trial and prevented Gonzales's

cross-examination on these issues. See State v. Clark, 143 Wn.2d 731, 766, 24

P.3d 1006 (2001) ("Failing to allow cross-examination of a state's witness under

ER 608(b) is an abuse of discretion if the witness is crucial and the alleged

misconduct constitutes the only available impeachment.").

Harmless Error

Gonzales contends that the cumulative errors require reversal. To the

contrary, even if the trial court erred in excluding all of the proffered evidence, we

find that the errors were harmless.

"Violations of a defendant's rights under the confrontation clause are

subject to Chapman[4] harmless error review." State v. Lile, 188 Wn.2d 766, 801,

398 P.3d 1052 (2017) (McCloud, J., concurring).[5] And "[u]nder Chapman, the

---

[3] See ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON § 7.06[3], at 7-54 (5th ed. 2020) ("Evidence of bias is admissible to impeach the credibility of a witness, and is always relevant.").

[4] Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

[5] Like in United States v. Abel, the court's limitation on Gonzales's cross-examination prevented Gonzales from showing Oates's bias and thus affected her constitutional right to confront a witness against her. 469 U.S. 45, 49-50, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) (holding that it was within the trial court's discretion to admit evidence of a key witness's bias because "the Confrontation Clause of the Sixth Amendment requires a defendant to have some opportunity

State bears the burden of proving that constitutional error is harmless beyond a reasonable doubt, which may be met 'if there is overwhelming evidence of the defendant's guilt that is not tainted by the error.'" Lile, 188 Wn.2d at 801 (citation omitted) (quoting State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015)). However, "[w]here, as here, there are few or no errors and the errors, if any, have little or no effect on the outcome of the trial, reversal is not required." State v. Wade, 186 Wn. App. 749, 775, 346 P.3d 838 (2015).

The jury convicted Gonzales only of those charges where the State proffered documentary evidence of duplicative payroll checks. Specifically, the jury convicted Gonzales of the charges where the State submitted copies of paychecks and bank summaries, which showed that Gonzales had endorsed and deposited into her personal bank account sometimes more than four checks with identical or nearly identical sums for the same pay period and for over 30 pay periods. Where the checks were not assigned to a pay period, i.e., where they appeared to be advances, and thus required credible testimony from Oates that he did not authorize the checks, the jury acquitted Gonzales or deadlocked. The State submitted overwhelming evidence to the jury that Gonzales had issued herself unauthorized duplicate checks, and the physical evidence was untainted by Oates's testimony. Furthermore, Gonzales attacked Oates's credibility when she questioned him about his inconsistent allegations to the police. Accordingly,

---

to show bias on the part of a prosecution witness"); see also Lee, 188 Wn.2d at 489 ("The confrontation clause primarily protects 'cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand.*'" (quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974))).

No. 80019-1-I/13

the State established that any reasonable jury would have reached the same result even if the trial court had not excluded the testimony proffered by Gonzales.  Any error was harmless and does not require reversal.

We affirm.

WE CONCUR: